**Arthur F. GARNER, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

No. 26129.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 6, 2004.

Mark A. Grothoff, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, MO, Respondent.

JEFFREY W. BATES, Chief Judge.

Arthur Garner ("Garner") was found guilty by a jury of four counts of sexual misconduct involving a child by coercion, in violation of § 566.083.[1] The trial court sentenced Garner to five years imprisonment on each count and ordered the sentences to run consecutively. We affirmed the convictions and sentences on direct appeal in *State v. Garner*, 103 S.W.3d 866 (Mo. App.2003).

Garner then filed a motion to vacate, set aside or correct judgment or sentence pursuant to Rule 29.15.[2] New counsel was appointed, and an amended motion was filed. In Garner's amended motion, he alleged ineffective assistance of counsel because his trial counsel failed to request, *inter alia*, that the venire panel be quashed "when comments made by a venire member tainted the panel...." The motion court judge, who also presided at the jury trial, found the jury was not tainted by the venireperson's remarks and denied Garner's motion without an evidentiary hearing.

Garner challenges this ruling on appeal, contending that he pled sufficient factual allegations to require an evidentiary hearing on the issue of whether his trial counsel was ineffective for not moving to quash the venire. Because the record conclusively shows that Garner is not entitled to relief, we affirm.

## I. Standard of Review

Garner's amended motion alleges ineffective assistance by his trial counsel. The burden of proving this claim rests on Garner. Rule 29.15(i). Missouri follows the *Strickland* standard to determine whether an attorney provided ineffective assistance to a criminal defendant.[3] *Deck v. State*, 68 S.W.3d 418, 425 (Mo. banc 2002). To prevail, Garner must prove that: (1) counsel's performance did not conform to the degree of skill, care and diligence of a reasonably competent attorney; and (2) counsel's poor performance prejudiced the defense. *Id.* For prejudice to exist, Garner must prove "there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 426 (italics in original). Garner must prove each portion of this two-pronged performance and prejudice test in order to succeed on his ineffective assistance of counsel claim:

---

**1.** All references to statutes are to RSMo (2000).

**2.** All references to rules are to the Missouri Rules of Criminal Procedure (2004).

**3.** *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

A criminal defendant must satisfy *both* the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim. In reviewing such a claim, courts are not required to consider both prongs; if a defendant fails to satisfy one prong, the court need not consider the other. And, a court need not determine the performance component before examining for prejudice. If it is easier to dispose of the claim on the ground of lack of sufficient prejudice, the reviewing court is free to do so.

*Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987) (italics in original).

Garner's motion was denied without a hearing. The trial court's decision is presumptively correct. *See Bryan v. State*, 134 S.W.3d 795, 798 (Mo.App.2004); *Crawford v. State*, 105 S.W.3d 926, 927–28 (Mo.App.2003). Our review is "limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous." Rule 29.15(k); *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996). Findings of fact and conclusions of law are clearly erroneous only when, after reviewing the entire record, this court is left with the definite and firm impression that a mistake has been made. *State v. Taylor*, 929 S.W.2d 209, 224 (Mo. banc 1996).

## II. Statement of Facts

In Garner's direct appeal, we set forth the underlying facts resulting in his convictions. *See Garner*, 103 S.W.3d at 868–69. In this opinion, we will recount only those facts relevant to the issue presented in this appeal.

Garner claims his trial counsel was ineffective for failing to request that the venire be quashed after venireperson Bumgarner ("Bumgarner") made inflammatory and prejudicial comments that tainted the entire panel. The comments at issue were made during the *voir dire* examination conducted by Garner's attorney, Ms. Birdsong, to determine whether venirepersons would be adversely affected if Garner did not testify on his own behalf. The entire colloquy among Birdsong and the venirepersons concerning this issue is set out in full below. We do so in order to consider Bumgarner's responses in context and in comparison to the responses given by other members of the venire to the same inquiry:

MS. BIRDSONG: How many here think that if Mr. Garner didn't testify, that he must have something to hide? Anybody? Does anybody feel that way?

VENIREPERSON WHITE: That confuses me. I'm not sure how I feel about that. That would bother me. I don't know how it would affect me.

MS. BIRDSONG: This is Number 27, Mr. White. It would bother you?

VENIREPERSON WHITE: Yeah.

MS. BIRDSONG: Why would it bother you?

VENIREPERSON WHITE: Because I think anyone that's before a court in a criminal case, particularly this kind of a case, should want to have his say.

MS. BIRDSONG: Okay. Now, [the Prosecutor] has mentioned to you about some jury instructions, and these jury instructions say the State has the burden of proof in this case, that they have to prove their case beyond a reasonable doubt, and we have a presumption of innocence.

VENIREPERSON WHITE: And I wouldn't have any problem with that. I might have a problem, but I don't think it would shift me one direction or another relative to the merits in the case.

MS. BIRDSONG: You don't think it would shift you?

VENIREPERSON WHITE: It would bother me that he didn't want to testify in his own defense, but it wouldn't determine my—

MS. BIRDSONG: Would it affect your decision if he didn't testify?

VENIREPERSON WHITE: No.

MS. BIRDSONG: In the back of your mind, would you be wondering if he was hiding something?

VENIREPERSON WHITE: I would be wondering why he wouldn't testify in his own behalf, but I don't think it would affect my decision.

MS. BIRDSONG: I saw you shaking your head.

VENIREPERSON CLEYBERGH: I agree with that gentleman, it would bother me.

MS. BIRDSONG: Would it cause you to be impartial about your decision?

VENIREPERSON CLEYBERGH: I don't think so, but it would be in the back of my mind for sure.

MS. BIRDSONG: You don't think so?

VENIREPERSON CLEYBERGH: Probably.

MS. BIRDSONG: Well, as an attorney, an attorney has to advise their clients about numerous things. One of those things might be whether to testify or not. Now, it might not be because the defendant has something to hide, it's just the advice of counsel. There's lots of different reasons, trial strategies, why defendant might not testify. Now, can you take that into consideration? Is there anyone that this just really bugs them, "I want to hear from that guy; if I'm here, I want to hear from that guy"? No, okay.

Now, your jury instructions say that a defendant has the right not to testify. Can everyone here follow that instruction that says that you cannot hold that against Mr. Garner if he decides not to testify? Can everyone here follow that instruction? Mr. Webster?

VENIREPERSON WEBSTER: I can.

MS. BIRDSONG: You can, okay. Ms. Ohmart, we haven't heard from you today.

VENIREPERSON OHMART: Yes.

MS. BIRDSONG: You think you could follow that instruction, okay. Number 27, Mr. White, we already talked to him. Could you follow the instruction in the jury instructions that says the defendant has the right not to testify, and you can't hold that against him ultimately?

VENIREPERSON WHITE: Yes. I already answered that, but yes.

MR. BIRDSONG: Number 3, Ms. Bumgarner, could you follow that instruction?

VENIREPERSON BUMGARNER: Usually the defense don't—they don't want to testify, do they? The attorneys usually doesn't want their—

MS. BIRDSONG: Why do you think that is?

VENIREPERSON BUMGARNER: I just heard a lawyer say that one time, that they usually will hang theirself if they get up there and talk.

MS. BIRDSONG: What do you mean they'll hang themself? You think all defendants are guilty or—

VENIREPERSON BUMGARNER: No, that's just what the lawyer said, that the defense usually advised the defendant not to testify.

MS. BIRDSONG: You don't know why, you just heard somebody say that once?

VENIREPERSON BUMGARNER: Just because they usually will incriminate themselves one way or another, and this way they—they have to prove him guilty, he doesn't have to prove his innocence.

MS. BIRDSONG: Mr. White?

VENIREPERSON WHITE: That's why it wouldn't be a problem for me, because even though I don't like the idea of them not testifying, it could be, like you say, it could be on advice of counsel, and it may just be because he's going to be a lousy witness. That's what the attorneys determine, and if he's a lousy witness, you don't want him up there. It may have nothing to do with him being guilty or innocent. I just have a problem in a general sense that I don't like a person not testifying.

Ms. Birdsong then moved to another topic of inquiry.

At the conclusion of *voir dire,* all of the venirepersons participating in this discussion, except Bumgarner, were removed from the venire via peremptory strikes.[4] During the trial, Garner did not testify on his own behalf. After the close of the evidence, the jury received Instruction No. 15. It stated that, "[u]nder the law, a defendant has the right not to testify. No presumption of guilt may be raised and no inference of any kind may be drawn from the fact that the defendant did not testify."

Judge Mary Dickerson, who presided over Garner's trial, also ruled on his amended motion for post-conviction relief. In Judge Dickerson's findings, she specifically determined the jury was not tainted by Bumgarner's comments:

The colloquy between Movant's attorney and the venire person Bumgarner is set out in Movant's motion. If Movant's attorney had asked to quash the entire panel, the Court would have denied it because there was no evidence that the jury was tainted. If Movant's counsel had questioned further, would the out-come of the case have been any different? The Court cannot find that it would have been based upon the evidence received at trial. If the entire voir dire questioning regarding defendant's right not to testify is considered, the Court does not believe that the record established a tainted jury.

Therefore, Judge Dickerson dismissed Garner's amended motion with prejudice for failing to meet his burden of proof.

### III. Discussion and Decision

The issue presented by Garner's appeal is whether the trial court erred in refusing to grant him an evidentiary hearing on his claim, not whether he is actually entitled to relief. *See Masden v. State,* 62 S.W.3d 661, 664–65 (Mo.App.2001). "To be entitled to an evidentiary hearing, a movant must: (1) allege facts, not conclusions, that, if true, would warrant relief; (2) these facts must raise matters not refuted by the record and files in the case; and (3) the matters complained of must have resulted in prejudice to the movant." *Barnett v. State,* 103 S.W.3d 765, 769 (Mo. banc 2003). Thus, if the files and records of the case conclusively show that Garner is not entitled to relief, no evidentiary hearing is required. Rule 29.15(h); *State v. Brooks,* 960 S.W.2d 479, 497 (Mo. banc 1997). After reviewing the trial transcript, we hold that the motion court was not required to hold an evidentiary hearing on Garner's post-conviction motion because the files and records of the case conclusively show he is not entitled to relief.

"Disqualification of an individual juror due to remarks indicating bias or prejudice is generally not a sufficient ground in itself to challenge the entire jury panel." *State v. Jordan,* 947 S.W.2d 95, 96

---

4. White was stricken by the prosecution. Cleybergh, Webster and Ohmart were stricken by the defense.

(Mo.App.1997). A panel need not be disqualified unless remarks in the presence of the panel are "so inflammatory and prejudicial that defendant's right to a fair trial is infringed upon." *Id.* The trial court is in the best position to decide the impact of such remarks on the jury. *State v. Sprinkle,* 122 S.W.3d 652, 669 (Mo.App.2003).

Here, the motion court concluded that the venire was not tainted by Bumgarner's comments. That determination is not clearly erroneous. Bumgarner's comments do not establish that she was biased or prejudiced against Garner in any way. Indeed, when directly asked whether she thought all defendants were guilty, she answered, "no." It is abundantly clear that she was simply relating what she "heard a lawyer say ... one time" about whether this unnamed lawyer thought it was advisable for criminal defendants to testify. There was no indication that she had any special knowledge about the law or Garner's case which would lead other jurors to give her comments any weight. *See Sprinkle,* 122 S.W.3d at 669. The gist of Bumgarner's comments was that the State would have to prove the guilt of a defendant who did not testify, whereas a defendant who did testify might "have to prove his innocence." Neither the prosecution nor the defense considered Bumgarner's comments to be sufficiently worrisome to warrant the use of a peremptory strike to remove her from the jury.

Moreover, there is no indication that Bumgarner's remarks adversely affected any other venirepersons. For example, Venireperson White responded to this same line of inquiry immediately after Bumgarner made the allegedly inflammatory statements. White's answer to the question suggests that Bumgarner's statements assisted White in articulating a legitimate reason why a defendant may not want to testify: i.e., on the advice of counsel because the defendant might be "a lousy witness, [and] you don't want him up there. It may have nothing to do with him being guilty or innocent."

Finally, we note that the statements made by Bumgarner are far more innocuous than other *voir dire* comments which have been held insufficient to require quashal of an entire venire or the declaration of a mistrial. *See, e.g., State v. Thompson,* 985 S.W.2d 779, 789–90 (Mo. banc 1999) (prosecutor's question asking if venireperson had already presumed the defendant was guilty); *State v. Evans,* 802 S.W.2d 507, 514 (Mo. banc 1991) (venireman's comment that "[e]verybody's got some kind of thoughts, *what he did to this nine year old girl* "); *State v. Taylor,* 324 S.W.2d 643, 648 (Mo.1959) (venireperson's statement that she was ready to give the defendant the maximum sentence and need not hear the rest of the evidence); *State v. Weidlich,* 269 S.W.2d 69, 71 (Mo. 1954) (venireman's statement that "I don't think I can give a thief a fair trial"); *State v. Kelley,* 83 S.W.3d 36, 42 (Mo.App.2002) (venireperson's comment that he knew about defendant and so could not be impartial); *State v. Reed,* 789 S.W.2d 140, 141–42 (Mo.App.1990) (venireman's statement that he had known the defendant since birth and that "he might have done it or he might not have done it, but I fell [sic] like he did do it, you know, because of knowing him as well as I do").

Since the trial court specifically found that the venire was not tainted and that the court would have denied a request to quash the venire, Garner failed to prove ineffective assistance of trial counsel. His attorney cannot be faulted for failing to make a motion to quash the venire that would have been denied. *See, e.g., Vicory v. State,* 81 S.W.3d 725, 731 (Mo.App.2002) (the motion court did not clearly err in holding that trial counsel was not ineffec-

tive for failing to object to the State's closing argument because further objections would have been fruitless). The motion court's findings of fact and conclusions of law concerning this issue are not clearly erroneous. Rule 29.15(k); *State v. Tokar*, 918 S.W.2d 753, 761 (Mo. banc 1996). No evidentiary hearing was required because the files and records in the case conclusively show that Garner is not entitled to relief. Rule 29.15(h); *State v. Brooks*, 960 S.W.2d 479, 497 (Mo. banc 1997). The trial court's order dismissing Garner's amended motion is affirmed.

SHRUM and BARNEY, JJ. concur.